CASE 7—ACTION BY W. J. LOUGHRIDGE AGAINST MOSES
BURKHART TO RECOVER LAND.—Dec. 11.

# Burkhart v. Loughridge

Appeal from Harlan Circuit Court.

M. J. Moss, Circuit Judge.

Judgment for plaintiff. Defendant appeals. Reversed.

1. Trial—Reception of Evidence—Civ. Code Prac. sec. 606, subsec. 3, provides that no person shall testify for himself in chief after introducing other testimony for himself in chief. Held, that where, in a suit to recover land, defendant claimed title under a title bond alleged to have been executed to I., and plaintiff took the deposition of I., in which he stated that no bond was made to him, and there was no cross-examination of the witness, and thereafter defendant took the deposition of I., in which he stated that a bond was executed to him, though defendant did not obtain leave to cross-examine I., the latter's second deposition should be regarded as a cross-examination, and hence an objection to a subsequent deposition given by defendant was without merit.

2. Evidence—Best and Secondary Evidence—Lost Instrument—In a suit to recover land claimed by plaintiff under a title bond, the testimony of an attorney that plaintiff gave him the bond to keep and have it recorded, and that he did not know where it was, although he had made a thorough search for it, and that there was no intention on his part to misplace it, was sufficient evidence of the loss of the bond to admit parol evidence of its contents.

3. Same—On an issue in an action to recover land as to the authenticity of a lost title bond, evidence considered, and held sufficient to sustain the same.

4. Bona fide Purchases—Without Notice—A purchaser of land at decretal sale can not claim to be a bona fide purchaser without notice, when at the time of the sale an adverse claimant

Burkhart v. Loughridge.

was present with a title bond in his hand forbidding a sale of a part of the tract, and the commissioner then announced that they were selling only the unsold land.

ISHAM G. LEABOW AND H. C. CLAY Attorneys for Appellant.

### AUTHORITIES CITED.

1. Purchasers buying with notice of the equitable title of others, not permitted to protect themselves against said equitable claims. (Waits Actions and Defenses, Vol. 3, page 449, citing; Murray v. Brown, 1 Johns Ch., 566; Heatley v. Finster, 2 Johns Ch., 158; Wilcoxen v. Morgan, 2 Col., 473; 1 Story's Eq. Jur., sec. 395.)

2. Information which should put a prudent person on inquiry, sufficient notice. (Currens & Colburn v. Hart, Hardin, 41; Cotten v. Hart, 1 Mar., 58; Nanz v. McPherson, 7 T. B. Mon., 599; Russell v. Petree, 10 B. M., 186; Willis v. Valette, 4 Met., 188-189.)

3. A party having notice sufficient to put him on inquiry cannot become a bona fide purchaser, when knowledge of the truth would render him otherwise. (Wright v. Ross, 36 Col., 437; Pendleton v. Fay, 2 Paige, 205.)

4. It is sufficient notice when the means of knowledge are at hand: and if a party omits to inquire and proceeds to act, he does so at his peril. (Angle v. N. W. L. Ins. Co., 92 U. S., 342; Hawley v. Cramer, 4 Cow., 717; Booth v. Barnum, 9 Conn., 286.)

5. Notice to Agent—Notice to principal. (Williamson v. Brown, 15 N. Y., 354; Miller v. Fraley, 21 Ark., 22; Worden v. Williams, 24 Ill., 67; Jones v. Bamford, 21 Iowa, 217.)

6. Court can convey only title of parties before it. (Campbell v. Mosely, Litt. Sel. Cases, 359.)

7. Proof in Chief and Rebutting proof. (Gibson's Suits in Chancery, sec. 463; Bouvier's Law Dictionary, "Rebutting Evidence.")

8. Court has discretion to allow party recalled as a witness in chief. (Louisville Life Ins. Co. v. Monarch, 99 Ky., 100.)

H. C. HAZELWOOD, H. E. ROSS AND J. G. AND J. S. FORESTER for appellee.

### AUTHORITIES CITED.

Burkhart v. Loughridge, 25 Ky. Law Rep., 816; Helton v. Asher, 20 Ky. Law Rep., 936; Gibson's Suit in Chancery, sec. 463; Civil Code, sec. 606, sub-sec. 3.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON—
Reversing.

W. J. Loughridge and others bought at decretal
sale a large body of land as the property of the heirs
of William Turner, Sr., who died about the year 1880.
Moses Burkhart claimed 100 acres of the land, and
Loughridge and his associates brought this action
against him to recover it. He set up title to the land
under a title bond which he averred that William
Turner, Sr., had made to Isaac Ingle of date July 5,
1874, and which he alleged that Ingle had assigned to
him. He also alleged that Ingle had paid Turner
for the land in his lifetime, but that Turner had failed
to make him a deed. The plaintiffs took a rule upon
him to file the title bond referred to. He responded
that the bond was lost. Issue was made on the loss
of the bond, and on the hearing of the rule the court
entered a judgment against Burkhart in the action on
account of his failure to file the bond. He appealed
from that judgment to this court, and on the appeal
the judgment was reversed; the cause being
remanded for a trial on the merits. Burkhart v.
Loughridge, 116 Ky., 604, 76 S. W., 397, 25 Ky. Law
Rep., 816. On the return of the case to the circuit
court it was transferred to the equity docket and con-
tinued for preparation. Before Burkhart had taken
any proof in support of his claim to the land under
the title bond, the plaintiffs took the deposition of
Isaac Ingle at Lexington, Ky.; the defendant not
being present in person or by attorney, and there
being no cross-examination. In that deposition Ingle
stated that he was 65 years old; that he lived
near Hagan, Lee county, Va.; that he had formerly
lived in Harlan county, Kentucky; that he had bought

the 100 acres of land from William Turner, Sr., about the year 1874 verbally, but that Turner had made him no title bond, and that he had not assigned the bond to Moses Burkhart; that he had not had a bond from Turner; that it was only a verbal arrangement; and that he had not paid anything on the land. This deposition was given on January 20, 1905. On February 3, 1905, Burkhart, getting Ingle in Harlan county, took his deposition again, in which he stated that he bought the land of William Turner; that Turner executed to him a bond for title; that he paid Turner for the land; and that he assigned the bond to Burkhart. He also stated that the plaintiffs had given him $30, a pair of shoes, and paid his expenses to go to Lexington and give his deposition; that John McDonald and Thomas Howard went with him to Lexington, and their expenses were also paid. He stated that he was frightened in Lexington, and did not know what he did state there, but that what he had stated in his second deposition was true. At the February term of the Harlan circuit court the case was continued, and no objection was made to the fact that Ingle's deposition had been retaken without leave, or that there had been no leave to cross-examine him. Afterwards, on March 16th, Moses Burkhart gave his deposition, and subsequently took his other proof in the case. At the August term the plaintiffs filed exceptions to the deposition of Moses Burkhart taken on March 16th, 1905, because Burkhart had previously taken the deposition of Isaac Ingle. The circuit court sustained this exception, and excluded the deposition of Moses Burkhart. The result of this was that he had not sufficient evidence to show the loss of the bond, and the circuit court on this ground again entered judgment against him.

Sub-section 3 of Section 606 of the Civil Code of

Practice is as follows: "No person shall testify for himself, in chief, in an ordinary action, after introducing other testimony for himself, in chief; nor in an equitable action, after taking other testimony for himself, in chief." This provision does not apply to rebuttal evidence. King v. King, 42 S. W. 347, 19 Ky. Law Rep. 868; Savage v. Bulger, 77 S. W. 717, 25 Ky. Law Rep. 1269. It has also been held that it is a rule of practice, not of right. Barkley v. Bradford, 100 Ky. 304, 18 Ky. Law Rep. 725, 38 S. W. 432. If, before taking the deposition of Isaac Ingle, Burkhart had gotten leave of court to cross-examine Ingle, there would be no doubt that he could subsequently give his own deposition and read his examination of Ingle as Ingle's cross-examination. He did not get leave to cross-examine Ingle, and for this reason an exception to the deposition might have been sustained, if filed, But, if we treat the statements of this deposition as a cross-examination of Ingle, and as only competent to impeach the testimony which Ingle had given at Lexington, we give full force to the letter of the Code, and at the same time do not allow a mere slip of the attorney to defeat a trial on the merits. Under the circumstances, the court would have given leave for Burkhart to cross-examine Ingle, and we see no reason why the second deposition may not be treated as a cross-examination on the first. The way it occurred evidently was that the deposition was taken by an attorney who had not prepared the case, and not by the regular attorney. We therefore conclude that the court should not have sustained the exception to Moses Burkhart's deposition, but should have allowed the second deposition of Ingle only to be considered as rebuttal evidence.

The proof for the defendant tends to show that Ingle is a man of very limited capacity, and in view

of his contradictory statements no weight can be given to his testimony on either side. Thomas Howard, who came to Lexington with him, had been the attorney for Burkhart, and is the person to whom Burkhart says he gave the bond, and that he has not since seen it. The testimony of Howard as given in the record in regard to the bond is in these words: "The defendant, Moses Burkhart, gave me this bond to keep, and then got it to have it recorded. I don't recall of ever seeing it since he got it. I have looked for it, and can't find it, have made a thorough search in my office, and have not been able to find it, and have no idea as to where it is. There was no intention on my part to misplace it, and no understanding of any kind that it was to be misplaced, nor was any such thing ever mentioned in my hearing." Under this proof we think there was sufficient evidence of the loss of the bond to admit parol proof of its contents. The bond had been recorded. A copy of the record was produced. So there is no doubt of the terms of the bond.

The only question in this case is as to its authenticity. The bond was witnessed by John Carwood and Jeff Burkhart. A son of John Carwood testifies that his father died in 1889, and that about five years ago the bond was shown to him; that he was familiar with his father's handwriting; that the bond was in his father's handwriting; and that his father's signature to it as a witness was genuine. Jeff Burkhart, the other witness to the bond, testified to being present at its execution; that it was written by John Carwood and witnessed by himself and Carwood. The assignment of the bond from Ingle to Burkhart was made on November 22, 1900, and this was witnessed by Jeff Burkhart and James Dean, who testify to it. So the defendant Burkhart makes out his case without any

help from the witness Ingle. 'He also·proved by one witness that Turner told him he had sold 100 acres to Ingle; that Turner had him to help lay off the boundary; that Turner told him that he had made Ingle the bond; and that he knew of Ingle's paying Turner for the land. Several other witnesses testify that this piece of land was known as Ingle's land in the neighborhood after about the year 1874, and state declarations of Turner similar to those the witness referred to.

On the whole evidence, we are forced to the conclusion either that the bond is genuine or that all of these witnesses, who are otherwise unimpeached, are swearing falsely. In addition to ·this, Ingle is an ignorant man, and can neither read nor write. Jeff Burkhart, the next most prominent man in the transaction, makes his mark, and Moses Burkhart seems to have little education. There is nothing in the record to indicate that these men are the kind of persons to fabricate a paper of this sort, and, while most of the witnesses are akin to Burkhart, some are not, and we cannot reject a witness' testimony when it is not contradicted in any way simply because he is akin to one of the parties to the action. We attach no importance to the supposed variation in the signature of William Turner to the bond, and the testimony of Howard, who recorded the bond, to the effect that the paper looked old, but the writing looked new, is contradicted by that of Carwood, who testified that the paper was in his father's handwriting, and that his father died in 1889, long before this controversy arose. The plaintiffs are not bona fide purchasers without notice. When they bought at the commissioner's sale, Jeff Burkhart was there with the bond in his hand and forbidding the sale of this part of the tract. The commisisoner and the attorney who were conducting

the sale then announced that they were selling only the unsold land.

Judgment reversed, and cause remanded for a judgment in favor of appellant.

Justice O'REAR dissenting.

Petition for rehearing by appellee overruled.