**Robert A. PARRIGIN, Appellant,**

v.

**Jack SAWYER, Appellee.**

Court of Appeals of Kentucky.

July 2, 1970.

Rehearings Denied Sept. 25, 1970.

John T. Mandt, Somerset, for appellant.
Bertram & Bertram, Monticello, for appellee.

OSBORNE, Judge.

The appellant, Robert A. Parrigin, is the unsuccessful candidate of the Republican party for the office of County Court Clerk of Wayne County. The appellee, Jack Sawyer, is the successful candidate of the Democratic party. The election was conducted on November 4, 1969. Sawyer was the then incumbent County Court Clerk seeking re-election. There were 4774 votes cast at the polls on election day. Of these votes, Parrigin received four more votes

than did Sawyer. There were 164 absentee ballots cast. Of these, Sawyer received 34 more than Parrigin, thereby making Sawyer the apparent winner of the election.

The Wayne County Board of Election Commissioners certified Sawyer as the winner. Shortly thereafter Parrigin instituted this contest action in which he alleged the invalidity of the absentee ballots cast in the election and requested the court to declare him the winner. The case was tried before a special judge, the Honorable Thomas W. Hines of Bowling Green.

At the conclusion of the proceedings, the trial judge entered what is designated as "Summary of Facts and Judgment." The pertinent part of it is as follows:

"The record reveals * * * 164 voters cast their votes" (absentee votes) "in the county court clerk's race. The record reveals that the contestant received a majority vote from the voters who cast their votes in the precincts on election day; however, when the absentee ballots were counted, * * * contestee was the winner by a margin of 34 votes * * *."

After reviewing the allegations of each of the parties relative to certain notaries being related to certain candidates, the trial court continues its findings as follows:

"The election commissioners failed to have three locks on the absentee ballot box and the keys were not properly kept in the hands of the commissioners; however, there does not appear to be any fraud in the record because of this failure.

"The contestee, Jack Sawyer, is guilty of an impropriety in that he placed the instructions to the absentee voters on his letterhead. The court believes this to be improper and that he should not have done so.

"The court finds further that some 20 absentee notary certificates did not show

the expiration date of the notary public's commission.

"It seems to be apparent to the court that irregularities do appear in approximately 30 of the absentee ballots; however, in view of the fact that of the total of the 262 applications that only 164 of the voters cast their vote in the county court clerk's race on November 4, 1969, in Wayne County, Kentucky, and in view of the fact that some 130 or 135 voters would be disfranchised in casting their votes in the county court clerk's race on said date and in the absence of any showing of how the questioned voters cast their votes, the court is of the opinion that a judgment should be granted as follows:

## "JUDGMENT OF THE COURT

"It is ordered and adjudged by the Court that the petition of the Contestant be and the same is hereby dismissed; that the Contestee, Jack Sawyer, is the duly elected Clerk of the Wayne County Court, having been elected at the general election on November 4, 1969; that the motion to dismiss the testimony offered by the Contestant after the testimony of witnesses had testified in his behalf, but in view of the fact that counsel for Contestee took the Contestant, Robert A. Parrigin, as if on cross examination and after that certain witnesses were taken by agreement, it is the opinion of the Court that the Counsel for Contestee waived any right to KRS 421.210.

"The Court is further of the opinion that if the Court of Appeals should decide that this Court is in error regarding the 40 applications which were notarized by Zella Anderson and B. G. Edwards, then in that event, the Contestant should be declared the winner, but this Court being of a contrary opinion is unwilling to disfranchise the 164 votes cast by absentee voting; and it is, therefore, ordered and adjudged by the Court that the Contestee, Jack Sawyer, is the duly

elected Clerk of the Wayne County Court, and it is further ordered by the Court that each party pay their own costs."

It is the position of the appellant that this court should proceed to make its own findings of fact and draw its own conclusions of law because the order of the trial court is not in conformity with the evidence which was taken by deposition and is available to this court. It is not the function of an appellate court to make findings of fact, but we have reviewed the testimony in the case and do not find ourselves in disagreement with the findings made by the trial court. However, under the circumstances of this case, we are in disagreement with the law as it was applied. Our examination of this record reveals that Jack Sawyer the appellee was County Court Clerk of Wayne County and seeking re-election as County Court Clerk. He was charged with the performance of several functions under KRS 126.010, etc. We find that certain of his actions in carrying out his duties under the foregoing statutes were purposely designed to assist his own candidacy. As an example, KRS 126.220 provides:

"Application forms; instructions for voters; furnishing of supplies.

The Secretary of State shall also cause to be prepared and printed an appropriate number of forms for application for absent voter's ballots, and of instructions for absent voters. The Secretary of State shall furnish to each County Court Clerk, upon application, a sufficient number of inner envelopes, application forms and instructions."

It is the obvious intention of the legislature that these instructions be prepared by the Secretary of State and that they be uniform throughout the entire state and that when request is made the county clerk is to furnish the instructions as prepared by the Secretary of State. Instead of following this statute, appellee prepared his own instructions which were mailed under his letterhead containing his name in three

other places. This was an obvious use of the absentee voting law for his own political benefit and was the use of his office to take an unfair advantage of his opponent in the campaign. The instructions which were mailed read as follows:

"CLERK WAYNE COUNTY COURT
   Phone 348–2221   P. O. Box 565
MONTICELLO, KENTUCKY 42633

INSTRUCTIONS TO ABSENT VOTERS.
Dear Voter:
   As your county clerk we have been able to acknowledge the signatures of the persons applying for an absent voter's ballot.

   Under the law we will be unable to acknowledge the signatures on the applications or absent ballots this year due to the fact that I am a candidate for Re-Election to the county clerk's office. Of course we are permitted and will be happy to help you with your application in any way other than notarizing or acknowledging the signature.

   The law which prohibits us from notarizing the application is found in Chapter 126.160 of the Kentucky Revised Statutes which reads as follows: 'KRS 126.160, Applications for absent voter's ballots shall be signed and sworn to by the absent voter before anyone authorized by law to administer an oath, *provided neither the person so authorized nor his deputy or employe nor anyone for or with whom he works or with whom he is related by blood or marriage is a candidate to be voted for at the election.'*

Keep in mind the application must mailed to me

Jack Sawyer, Clerk Wayne County Court
P. O. Box 565
Monticello, Kentucky 42633

Not less than 20 days before the election, or not later than October 16, 1969.

General Election Day November 4, 1969.

In the event you have further questions or if we can help you in any way please let us know.

Thank you.
                     Sincerely,

                     Jack Sawyer
                     Clerk Wayne Co. Court"

   There are many other irregularities some of which have their genesis in the county court clerk's office. They are:

   1. Of the absentee ballots counted, 29 of the inner envelopes did not show the date of expiration of the notary's commission. Many of the inner envelopes were notarized by persons conclusively shown to be related by blood or marriage to a candidate in the election.

   2. Six of the inner envelopes were not signed by any notary at all. Four of the absentee voters did not sign the affidavit contained in the inner envelope. Ten of the voter's affidavits were blank on the inner envelope. One hundred and fifty-two of the absentee voters did not write their names on the outer envelopes.

   3. None of the absentee ballots was signed on the back by any of the Board of Election Commissioners or the county court clerk.

   4. No guard was ever placed on the absentee ballot box.

   5. The ballot box itself did not comply with the statutes of Kentucky in that one of the hasps was missing from the box and it could only be locked at two points.

   6. The appellee did not deliver a key to the absentee ballot box to each member of the Board of Election Commissioners. Instead, all of the keys were kept in the possession of one of the Board of Election Commissioners.

   The provisions of KRS 126.255 requiring the county court clerk, immediately following the deadline for filing applications for absent voters ballots, to post in the courthouse names of all applicants was

not complied with. In Arnett v. Hensley, Ky., 425 S.W.2d 546, p. 553, we wrote:

"The county court clerk is in a particularly sensitive position as respects the proper handling of absentee ballots. When the incumbent clerk is a candidate for re-election as was Arnett in the present case, he ' * * * finds himself in an extremely high position of trust and responsibility.' Crowe v. Emmert, Ky., 305 S.W.2d 272, at pages 273 and 274."

■ Today we reaffirm that language and likewise we affirm what we said in Ragan v. Burnett, Ky., 306 S.W.2d 281, to the effect that the right to vote by absentee ballot is a special privilege granted by the legislature. The privilege is granted under the specific condition that all of the procedures set out in the legislative act be complied with. Irregularities in these procedures cannot be tolerated, especially when they are committed by a candidate and obviously inure to his advantage. We are of the opinion that the trial court erred in not applying the rule set out in the Ragan and Arnett cases, supra, to the facts which he properly found to exist here. Therefore, the judgment is reversed upon the direct appeal with directions to enter an order directing the election commission to certify the appellant Parrigin as the successful candidate, as it appears conclusively that the irregularities relating to the casting of all absentee ballots are so great as to leave one in doubt as to their validity.

■ Appellee has filed a cross-appeal on two grounds. One, he questions the taxation of the costs herein, one-half of the cost being taxed to him. And, two, he questions the right of appellant to take direct proof after he had taken the deposition of certain witnesses. The basis of this latter contention is to be found in KRS 421.210(3). We have grave doubts as to the constitutionality of subsection (3) of KRS 421.210. This is an attempt by the legislative body to regulate the internal procedures of the judicial system which cannot be done under the doctrine of separation of powers. However, be that as it may, we have previously held that this is a matter within the discretion of the trial court. See Edmonds v. Hensley, Ky., 240 S.W.2d 631. It goes without saying that in this instance the taxation of cost was in the discretion of the trial court. In any event as appellee has not prevailed upon this appeal, this would no longer be an objection that he could insist upon.

Judgment is reversed upon the direct appeal and affirmed upon the cross-appeal.

All concur except NEIKIRK, J., who was not sitting.